The Honorable Stephen D. Bright State Representative 49 Oak Forest Loop Maumelle, Arkansas 72113-6816
Dear Representative Bright:
I am writing in response to your request, made on behalf of a newspaper reporter,[1] for an opinion on whether the annual evaluation of the North Little Rock superintendent of schools is open for public inspection and copying under the Arkansas Freedom of Information Act ("FOIA") (A.C.A. §§ 25-19-101 to -108, as amended by Acts 1259, 1336 and 1653 of 2001).
RESPONSE
In my opinion the answer to your question will turn upon whether the superintendent has been suspended or terminated and whether the other factors listed in A.C.A. § 25-19-105(c)(1) are present. If the superintendent has been neither suspended nor terminated, the analysis stops there and in my opinion the annual performance evaluation of the superintendent is not subject to inspection and copying under the FOIA.
You have enclosed with your request a copy of a letter to you from a newspaper reporter stating that "[b]ecause there is a compelling public interest in disclosure, The Times maintains A.C.A. § 25-19-105 to [sic] allow that copies of the North Little Rock School District Superintendent's annual evaluation performed by the North Little Rock School Board be made open to the public." Also enclosed is a letter from the Superintendent to the reporter stating that: "It is my opinion that personnel records, including employee evaluations, are exempt from disclosure. Please refer to 25-19-105."
The relevant statutory subsections are A.C.A. §§ 25-19-105(b)(12)[2] and (c)(1) as amended by Act 1653 of 2001, which provide as follows:
 (b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:
* * *
 (12) Personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy;
* * *
 (c)(1) Notwithstanding subdivision (b)(12), all employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in disclosure.
These subsections describe two different kinds of records: 1) personnel records, and 2) employee evaluation or job performance records. Clearly, the annual evaluation of a school superintendent is an employee evaluation record and is subject to the distinct test set out at A.C.A. § 25-19-105(c)(1) above. Such records are not subject to inspection and copying under the FOIA unless there has been a final suspension or termination of the public officer or employee. See Op. Att'y Gen. 97-189
and 97-154. See also Op. Att'y Gen. 88-078 (employee evaluation or job performance records of school superintendent only disclosable after suspension or termination and fulfillment of other criteria). Suspension or termination is a threshold requirement for the release of employee evaluation or job performance records. Ops. Att'y Gen. 97-189 and 97-154. Only if such a suspension or termination has occurred do the other factors for release of such records become relevant. If there has been a suspension or termination, the suspension or termination must be final in the sense that all administrative avenues of appeal have been exhausted, the records must have formed a basis for the suspension or termination and there must be a "compelling public interest in disclosure" before the records are open to inspection and copying. Each of the above criteria must be met prior to the release of employee evaluation or job performance records.
It has been stated that:
 The exemption for evaluation records reflects the public interest in maintaining an effective public employee evaluation system as well as the privacy interest of employees. Without an exemption for such records, supervisory personnel who perform the evaluations may not be candid in assessing employee performance. Also, routine disclosure of the records could undermine one important objective of the evaluation process — identification of weaknesses with an eye toward fostering improvement — by revealing an employee's deficiencies before he has an opportunity to correct them. . . . These requirements are designed to ensure that evaluation records are not released prematurely and that disclosure will be made only when the records are relevant to employee performance deficient enough to merit suspension or termination.
Op. Att'y Gen. 97-020 at 2 citing Watkins, The Arkansas Freedom of Information Act (mm Press, 2d Ed. 1994), at 131, 133. See also, Op. Att'y Gen. 2000-257.
You have not indicated whether the superintendent in question has been suspended or terminated. If not, in my opinion the threshold requirement has not been met and the annual performance evaluation performed by the school board is not subject to inspection and copying under the FOIA. If the superintendent has been either suspended or terminated, a factual analysis of the three remaining criteria must occur. If all the criteria have been met (exhaustion of administrative appeals, the evaluation formed a basis for the suspension or termination, and there is a compelling public interest in disclosure) the record would then be open to inspection and copying under the FOIA.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] I am happy to comply with your request under A.C.A. § 25-16-706, which authorizes me to provide state officials with formal opinions. I will note for your information, however, that custodians, requesters and subjects of personnel or evaluation records have an individual right to seek my opinion under the FOIA. See A.C.A. § 25-19-105(c)(3)(B). A request by a state official is not necessary in that instance. Under the latter statute, I must respond in three working days. Because the subject matter of your request falls within the latter statute, I have complied with the time limits specified therein.
[2] Act 1653 of 2001 renumbers the former A.C.A. § 25-19-105(b)(10) as (b)(12). That act, which contains an emergency clause, became effective April 16, 2001. Two other acts of the 83rd General Assembly amend the same subsection with two different new subsections (b)(12). See Acts 1259 and 1336 of 2001. These acts do not contain emergency clauses and are not yet effective. The subject matter of Act 1336 was included and renumbered in Act 1653 as subsection (b)(13). Obviously, the other new subsection (b)(12) in Act 1259 will ultimately be renumbered in further legislative proceedings or during the codification process.